■ In the Matter of the F. B. CHILDREN, Alleged to be Abused or Neglected. DEPARTMENT OF SOCIAL SERVICES OF THE

CITY OF NEW YORK, Respondent; JOHN M. et al., Appellants.—
Order, Family Court, Bronx County (Marjory D. Fields, F.C.J.),
entered on or about November 1, 1989, which granted grand-
parents intervenors' motion for temporary custody or visita-
tion solely to the extent of granting unsupervised visits with
infant M., unanimously affirmed, without costs. Appeal from
order of the same court, entered on or about November 15,
1989, which directed all counsel to provide a list of all wit-
nesses to be called and make offers of proof with respect to
each witness, dismissed as subsumed in the subsequent order
entered on December 22, 1989, without costs. Order, same
court and Justice, entered on or about December 22, 1989,
which denied grandparents intervenors' motion for reargu-
ment of the November 15, 1989 order, and precluded the
parties from offering testimony at trial for failure to comply
with said order, unanimously modified, on the law, the facts in
the exercise of discretion, to the extent of granting the parties
a 30-day extension to provide witness lists and offers of proof,
and otherwise affirmed, without costs.

In this case, the Department of Social Services brought the
underlying petition alleging physical and sexual abuse by the
husband and neglect by the wife, who have between them five
children. R. and S. aged 17 and 7, are the natural sons of the
husband, by a previous marriage; their mother is deceased.[1] J.
and C., aged 13 and 12, respectively, are the daughters of the
wife; there are substantial allegations that the husband, who
is the stepfather of these girls, repeatedly sexually abused
them. M., aged 3, is the only child the husband and wife have
in common. The husband allegedly used excessive physical
force against all five children; the wife allegedly knew, or
should have known, of the abuse, and did nothing to prevent
or stop it.

Appellants herein, who have been granted intervenor sta-
tus, are the maternal grandparents of J., C. and M. They
sought unsupervised visitation and/or custody of the three
girls, as well as S., who is concededly not a blood relation to
them. Mr. B., the natural father of J. and C., has also been
granted intervenor status and is seeking custody of the two
older girls.

Pending the outcome of the dispositional hearing as to the
wife,[2] the children are in foster care. Family Court, on Novem-

---

1 Because of his age, R. is not part of the instant proceedings.

2 The dispositional hearing as to the husband has been severed, because
he is incarcerated.

ber 1, 1989, granted the grandparents visitation privileges as to the youngest child, M., on the condition that the grandparents "prevent contact" between M. and respondent parents. However, the court declined to award the grandparents any visitation privileges with J. and C., or with S., their stepgrandson. The *sub silentio* reason for this appears to be because the grandparents accused the two older girls of making untruthful assertions regarding the alleged sexual abuse.

The grandparents now contend that the trauma of the alleged abuse has been exacerbated by the court-imposed separation of the children from the grandparents. The grandparents also now state that they believe the allegations of abuse.[3]

The Family Court properly denied temporary custody or visitation as to J. and C. It is noteworthy that the girls have affirmatively expressed a desire not to live with their grandparents. While public policy may favor either placing the children with a relative or allowing visitation *(see,* Family Ct Act § 1017), we do not believe it to be in the best interest of these two adolescent girls to foist upon them visits with, let alone place them in the custody of, the grandparents who denounced them when they disclosed that they had been sexually abused.[4] *(Compare, Dintruff v McGreevy,* 34 NY2d 887, 888-889 [1974].)* In addition, it is clear to us that the girls are not prevented from seeing their grandparents and, given the circumstances of the case at bar, it should be for the girls to make the choice of whether and when they wish to see their grandparents. *(Cf., Matter of Ehrlich v Ressner,* 55 AD2d 953 [2d Dept 1977] [not a sufficient reason to deny visitation where teen-age children claimed they were "too busy with their other activities to visit with their grandparents"].)*

Likewise, we will not modify the order regarding S., who is not a blood relative of the grandparents, and who was also permitted to see them when he expressed a desire to do so.

We are also in agreement with the Family Court that it is appropriate to permit visits with three-year-old M. She was

---

3 This appears, however, to be an equivocal acknowledgment at best. Significantly, the grandparents' reply brief states "to require that grandparents must believe all of the allegations, *before a hearing or a trial * * * is* Orwellian" (emphasis in original). Moreover, they attempt to justify their own less than admirable conduct by further stating in their reply brief, "[d]enial by the extended family of the horrendous allegations of sexual abuse occurring in the home is not uncommon."

4 We also note that it is certainly possible that custody will be awarded to their natural father.

not sexually abused, and thus should be enabled to develop a relationship with her grandparents in as healthy and positive of a visitation atmosphere as possible. In this regard, we are not unaware of certain allegations that the grandparents have violated the Family Court's order by allowing the respondent parents to have contact with M. during these visits; without passing comment as to the truth or falsity of these allegations, we affirm and underscore that aspect of the court's order as well.

Finally, while we uphold that portion of the order requiring all counsel to provide the court with witness lists and offers of proof,[5] we reverse that aspect of the order which constitutes a preclusion order. Because it does not appear that the failure to comply was "willful, contumacious or due to bad faith" (Dauria v City of New York, 127 AD2d 459, 460 [1st Dept 1987]), it was error to impose the drastic measure of preclusion.

Accordingly, the December 22, 1989 preclusion order is modified to the extent of granting the parties 30 days, following service of the within decision and order, to provide the court with witness lists and offers of proof, and except as so modified, the orders appealed from are affirmed. Concur—Sullivan, J. P., Carro, Milonas, Kassal and Smith, JJ.

5 While ordinarily no appeal as of right lies from this nondispositional order (Family Ct Act § 1112 [b]; Matter of Costa v Costa, 34 AD2d 646 [2d Dept 1970]), we are addressing this intertwined issue in the interest of judicial economy because the parties moved below within two weeks for a clarification and reargument of the sua sponte ex parte order, which led to the preclusion order herein appealed from, to which the parties, in unison, object.