■ In the Matter of OSCAR S., Respondent, v JOYESHA J., Appellant. [52 NYS3d 28]—

Order, Family Court, New York County (Marva A. Burnett, Ref.), entered on or about August 10, 2015, which, upon the parties' respective petitions, awarded sole legal and physical custody of the parties' children to petitioner father, with parenting time to respondent mother, unanimously modified, on the law and the facts, to remand the matter to the Family Court to issue an order addressing the process of the transfer of custody to the father, and to hold an immediate hearing on whether there any changed circumstances which would cause an award of legal and physical custody of the oldest child to the father to no longer be in her best interest, and otherwise affirmed, without costs.

The Family Court's determination to award custody of the parties' four children to the father has a sound and substantial basis in the record (*see Eschbach v Eschbach*, 56 NY2d 167, 173-174 [1982]). Where, as here, the Family Court's findings are based almost entirely on its assessment of the credibility of witnesses, and, in particular, the character of the parents, "its findings 'must be accorded the greatest respect' " (*Matter of Elissa A. v Samuel B.*, 123 AD3d 638, 639 [1st Dept 2014], quoting *Matter of Irene O.*, 38 NY2d 776, 777 [1975]). However, we remand to the Family Court for two purposes: to issue an order addressing the process of the transfer of custody to the father, and to hold an immediate hearing on whether transfer of custody of the oldest child to the father is still in her best interest, based on any change of circumstances since the trial.

The Family Court found, after considering all of the evidence, that the father was the parent better able to care for the children and ensure their relationship with the other parent. Although the mother had been the children's primary caretaker, there was ample evidence that her care of them was at times less than adequate. For example, although she lived close to the children's school, she acknowledged that she often got the children to school late. The testimony showed that the children were sometimes disheveled when they came for visits, and that one child showed up for a visit with her shoes on the wrong feet.

Moreover, the trial court found that the mother was "single-minded in her determination to keep the children away from the father . . . [and that she] did not consider the father to be an important part of the children's lives." The Family Court based this finding in large part on the mother's pursuit of a false sexual abuse allegation against the father, which it found she made for "the purpose of disrupting the relationship and contact between the father and the children." However, that was not the only support for the finding that the mother attempted to disrupt the children's relationship with their father; the evidence also showed that the mother often did not produce the children for scheduled visits (including court-ordered visits) with the father, sometimes taking them to visit the maternal grandmother instead, or brought them late; the mother failed to provide the father with information about the children's education, including their individual education plans; the mother failed to provide the father with information about their health, including emergency room visits;* and the mother testified that, if granted custody, she would not involve him in decision making about the children in the future.

The trial judge's finding that the mother was unlikely to comply with any visitation order was also supported by the mother's failure to comply with prior court orders; specifically, she did not make herself available to the Administration for Children's Services for a court-ordered investigation and home visit after the father reported that all of the children had reported to him that the mother pushed one of them, resulting in a "knot" on her head, and she failed to produce two of the children for in camera interviews, despite being ordered to do so.

As a result of the mother's false allegations and baseless family offense petition, the children were interviewed by the police and medically examined, and the custody trial was delayed for two years, so that the family offense proceeding could be heard first. For over a year during the pendency of the mother's family offense petition, the father had only supervised visitation with the children and was denied overnight visitation. The Family Court found that, despite this, the father managed to maintain a close, loving bond with the children. The court also found that the father would ensure that the mother had a "meaningful relationship with the children."

The mother's actions, coupled with the father's close bond with the children, justified the court's award of sole physical

---

* The father testified that he has since met the children's teachers and doctor, reviewed their report cards and attended parent-teacher conferences.

and legal custody of the children to the father, since " '[i]nterference with the relationship between a child and a noncustodial parent by the custodial parent is an act so inconsistent with the best interests of the child that it raises, by itself, a strong probability that the offending party is unfit to act as a custodial parent' " (*Victor L. v Darlene L.*, 251 AD2d 178, 179 [1st Dept 1998], *lv denied* 92 NY2d 816 [1998], quoting *Matter of Gago v Acevedo*, 214 AD2d 565, 566 [1995], *lv denied* 86 NY2d 706 [1995]; *see also Matter of Elissa A.*, 123 AD3d at 639; *David K. v Iris K.*, 276 AD2d 421, 422 [1st Dept 2000]). All four children took the position during the custody trial that they wished to remain with their mother, and the Family Court nonetheless ordered that the father be granted custody, after considering their stated wishes in light of their ages and their best interests. The Family Court found that the father is the parent best able to care for all of the children and to ensure that they have a relationship with the other parent, rather than "using the children as a weapon . . . as the mother has done."

The oldest child's attorney argues that this Court should award custody of her to the mother, in accordance with that child's wishes. Ordinarily, we would not consider this request since there was no request before the Family Court for split custody, and the child's attorney made the request for the first time on appeal. However, in light of the issues raised by the child's attorney, we direct the trial court to hold a hearing to determine whether there are any changed circumstances which would cause the transfer of custody of this child to the father to no longer be in her best interest. In conducting the hearing, the Family Court will focus on the child's best interest, "the age and maturity of the child and the potential for influence having been exerted on the child" (*Eschbach v Eschbach*, 56 NY2d at 173), as well as our strong presumption in favor of keeping siblings together (*id.*).

In view of the stay of enforcement of the Family Court's order granted by this Court on August 19, 2015, and so as not to disrupt the children's academic schedules, we also direct the Family Court to enter an order within 30 days encompassing the following provisions: the father should continue to see the children on the regular schedule set forth in this Court's stay, with the holiday schedule set forth in the Family Court's order to supersede the regular schedule, until the first Saturday following the last day of the spring 2017 semester of all of the children's schools, at which time the parenting schedule set forth in the Family Court's order would commence in its entirety. Concur—Acosta, J.P., Renwick, Manzanet-Daniels, Webber and Gesmer, JJ.